UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE: TARGET CORP.
SHAREHOLDER CLASS ACTION
LITIGATION

Case No. 2:25-cv-00135-KCD-DNF

# **ORDER**

This case belongs in Minnesota. The defendants are based there. The underlying facts occurred there. And nearly all the witnesses are there. Yet here we are in Florida. The Court now undoes that discrepancy. Defendant Target Corporation and its Board Members (collectively, Target) move to transfer this consolidated shareholder securities class action and its companion derivative action to the District of Minnesota. (Doc. 50).[1] Though this Court denied Target's earlier transfer motion, the facts on the ground have since changed. For the reasons below, Target's renewed motion is **GRANTED**.

## I. Background

Here are the relevant facts, which must be accepted as true at this stage. Target is a Minneapolis-based nationwide retailer. (Doc. 49 ¶ 1.) The company "has a long history of promoting various diversity, equity, and

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

inclusion (DEI) and environmental, social, and governance (ESG) causes." (*Id.* ¶ 2.) In 2023, Target commemorated Pride Month (the annual celebration of the LGBTQIA+ community) by rolling out an "extensive and prominent" campaign featuring "over 2,000 Pride Month-themed products." (*Id.* ¶¶ 4, 7.) Customers responded by boycotting Target, "leading [the company's] stock to experience its longest losing streak in 23 years." (*Id.* ¶ 9.) Target ultimately "lost approximately $25 billion in market capitalization during the second half of 2023." (*Id.* ¶ 13.)

Five individual shareholders then sued Target for various securities law violations in *Craig v. Target Corporation, et al.*, Case No. 2:23-cv-00599-JLB-KCD. (*Id.* ¶ 16, 180.) Specifically, they alleged Target "did not oversee or disclose [in its SEC filings] the obvious risks of [its] 2023 LGBT-Pride Campaign and the ESG/DEI initiatives which it advanced." (*Craig*, Doc. 52 ¶ 3.) Target moved to transfer that case to the District of Minnesota, which this Court denied. *See Craig v. Target Corp.*, No. 2:23-CV-599-JLB-KCD, 2024 WL 4981026 (M.D. Fla. Dec. 4, 2024). Then things snowballed.

Two securities class actions and three shareholder derivative actions were then filed against Target.[2] All involved the same allegations and issues

---

[2] *See State Board of Administration of Florida v. Target Corporation et al.*, Case No. 2:25-cv-00135-JLB-KCD; *City of Riviera Beach Police Pension Fund v. Target Corporation, et al.*, Case No. 2:25-cv-85-JLB-KCD; *McCollum v. Target*, Case No. 2:25-cv-00021; *Kaur v. Cornell*, Case No. 2:25-cv-00043; *Murphy v. Cornell*, Case No. 2:25-cv-00062.

2

underlying *Craig*. And all were brought here in the Middle District of Florida. These cases, along with *Craig*, were later consolidated into two matters: *In re Target Corp. Securities Class Action Litigation*, Case No. 2:25-cv-00135-KCD-DNF (the Securities Class Action) and *In re Target Corp. Shareholder Derivative Litigation*, 2:25-cv-00021-KCD-DNF (the Derivative Action). (Doc. 44; Doc. 51 at 6.) Target now moves to transfer both these cases to the District of Minnesota under 28 U.S.C. § 1404(a).

## II. Legal Standard

Section 1404(a) allows district courts to transfer "any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). This provision confers "broad discretion" to transfer cases "to a more convenient forum." *Saint-Fleur v. Amazon.com Servs. LLC*, No. 2:22-CV-833-SPC-KCD, 2023 WL 1929732, at *1 (M.D. Fla. Feb. 10, 2023); *see also England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988).

Absent the parties' consent, district courts must use a two-step inquiry when deciding whether transfer is appropriate. *Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016). First, courts must determine whether the case could have been filed in the proposed transferee district. *Id.*; *Riberio v. Krause*, No. 8:24-CV-00659-

3

KKM-AEP, 2024 WL 2868498, at *1 (M.D. Fla. May 6, 2024). Then they must determine whether transfer is proper by weighing several factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### III. Discussion

Everyone agrees that these cases could have been brought in the District of Minnesota. Remaining in dispute is how the § 1404(a) factors shake out. As discussed below, the Court finds these factors support transfer. For organizational purposes, the factors are sorted into two camps: those favoring transfer and those remaining neutral.

#### a. Factors Favoring Transfer

#### i. Convenience of the Witnesses

"The convenience of witnesses is generally considered one of the most—if not the most—important factors in a venue transfer analysis." *Fairstein v. Netflix, Inc.*, No. 220CV00180JLBMRM, 2020 WL 5701767, at *7 (M.D. Fla. Sept. 24, 2020); *see also Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1208 (N.D. Fla. 2020); *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259,

4

1264 (S.D. Fla. 2013). Target identifies four key non-party witnesses. (Doc. 51 at 10; Doc. 51-2 ¶ 51.) Each live in Minnesota and no longer work for Target. (Doc. 51-2 ¶ 51; Doc. 79 at 2.) Plaintiffs, on the other hand, have no witnesses—much less any living in Florida. So this factor weighs heavily for transfer. *See Kitzel v. Tunnell Gov't Servs. Inc.*, No. 8:22-CV-2733-VMC-AAS, 2023 WL 2330669, at *6 (M.D. Fla. Mar. 2, 2023); *Fairstein*, 2020 WL 5701767, at *7; *Watson v. Cmty. Educ. Centers, Inc.*, No. 2:10-CV-00778-36SPC, 2011 WL 3516150, at *4 (M.D. Fla. Aug. 11, 2011) ("Because the key witnesses work or reside in New Jersey, the convenience of the witnesses supports a transfer to New Jersey.")

### ii. Locus of Operative Facts

"The location of operative facts underlying a claim is [also] a key factor in determining a motion to transfer venue." *Nat'l Tr. Ins. Co.*, 223 F. Supp. 3d at 1245; *see also Yes Lighting, LLC v. PSG Energy Grp., LLC,* No. 18-24365-CIV, 2019 WL 13225114, at *3 (S.D. Fla. Sept. 19, 2019). "In determining the locus of operative facts, the court must look at the site of events from which the claim arises." *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1165 (S.D. Fla. 2017). "Misrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received." *Passmore v. Vertex Energy, Inc.*, No. 1:23-CV-128-TFM-N, 2024 WL 266531, at *6 (S.D. Ala. Jan. 24, 2024); *see also S.E.C. v. BIH Corp.*, No. 2:10-CV-577-

5

FTM-29, 2011 WL 3862530, at *3 (M.D. Fla. Aug. 31, 2011) ("[T]he SEC alleges that defendants disseminated the allegedly false press releases from Fort Myers. Assuming the truth of this allegation, the Court finds that the misconduct occurred in Fort Myers."); *Lazaro Fernandez, DDS, P.A. v. 3M Co.*, No. 16-21490-CIV, 2016 WL 11787457, at *3 (S.D. Fla. Aug. 26, 2016).

All the events underlying these cases occurred in Minnesota. Remember, Plaintiffs' claims center on Target's SEC filings and risk oversight. (Doc. 49 ¶¶ 85-119; *In re Target Corp. Securities Litigation*, Doc. 1 ¶¶ 3, 23.). Target's risk oversight was performed by teams that met in Minnesota. (Doc. 51-2 ¶¶ 28, 29, 31-33, 35, 37-40.) Its SEC filings were similarly reviewed and drafted in Minnesota. (*Id.* ¶¶ 41-43.) And Target's Board later approved those filings via meetings held at its Minnesota headquarters. (*Id.* ¶ 45.) So the locus of operative facts underlying Plaintiffs' claims is unquestionably Minnesota. *See Lazaro Fernandez, DDS, P.A.*, 2016 WL 11787457, at *3; *Huntley v. Chicago Bd. of Options Exch.*, 132 F. Supp. 3d 1370, 1374 (N.D. Ga. 2015); *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Nuvelo, Inc.*, No. 07 CIV. 1229 (HB), 2007 WL 2068107, at *5 (S.D.N.Y. July 20, 2007).

### iii. Forum's Familiarity with Governing Law

The Derivative Action alleges demand futility and that Target breached its fiduciary duties. Both claims turn on Minnesota law. *See Freedman v.*

6

*magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1133 (11th Cir. 2020) ("[T]he law of the state or place where a company is incorporated establishes the requirements that a shareholder must meet before bringing either a direct or derivative claim against a corporation."). A judge sitting in Minnesota "indisputably enjoys an advantage over the Middle District of Florida in deciding a claim based on" Minnesota law. *Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1281 (M.D. Fla. 2015). So this factor also favors transfer. *Id.*; *Fike v. JetBlue Airways Corp.*, No. 2:13-CV-706-FTM-38, 2014 WL 582877, at *3 (M.D. Fla. Feb. 13, 2014); *Cf. Nat'l Tr. Ins. Co.,* 223 F. Supp. 3d at 1245.

### v. Trial Efficiency and the Interests of Justice

Finally, transfer furthers efficiency. As mentioned, Minnesota is the epicenter for all matters related to these cases. Some of their issues turn on Minnesota law. And another shareholder case involving the same underlying facts is now pending in the District of Minnesota. *See Ranacis v. Cornell, et al.*, No. 0:25-cv-02743-NEB-SGE (D. Minn.). It thus makes sense for these cases to be up there too. *See Greely v. Lazer Spot, Inc.*, No. CV 411-096, 2012 WL 170154, at *3 (S.D. Ga. Jan. 19, 2012) ("[A]llowing this action to remain pending in this Court, while the Mainor case proceeds in the Northern District of Georgia, would waste time, energy, and money."); *Len Tran, Inc. v. Cal-Sungold, Inc.*, No. 808-CV-14-T-23MAP, 2008 WL 2025287, at *4 (M.D.

7

Fla. May 9, 2008) ("Trial efficiency and justice commend transfer because the dispute arose between two California corporations, most of the operative facts occurred in California, most of the witnesses and evidence reside in California, and California law governs interpretation of the contract.").

Still, Plaintiffs see things differently. They primarily contend that Florida has a significant interest in adjudicating its residents' securities fraud claims. They also stress that the Securities Class Action's presumptive lead plaintiff is Florida-based. While all of this may be true, most of the class is not in Florida. (Doc. 74 ¶ 5.) And the Derivative Action's lead plaintiff—Target—is headquartered in Minnesota. All things considered, the cases' Florida ties are really inconsequential. *See Huntley*, 132 F. Supp. 3d at 1374; *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1359 (M.D. Ala. 1998); *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 731 (N.D. Ill. 1997) (transferring class action from Chicago to Houston after noting that "while a large number of class members allegedly reside in Illinois, there is nothing in the record that shows the remaining class members are not more conveniently located to the court in Houston than Chicago").

Next, Plaintiffs argue that Target's transfer motion is untimely and should be stricken, or the delay should be weighed against transfer. Again, the Court disagrees. To be sure, defendants should act with "reasonable promptness" when seeking transfer. *See Williams v. Unum Life Ins. Co. of*

8

*Am.*, No. 24-CV-24113-RAR, 2025 WL 1591213, at *3 (S.D. Fla. June 5, 2025); *Jackson v. Athena Bitcoin, Inc.*, No. 4:24CV331-MW/MJF, 2025 WL 2816769, at *3 (N.D. Fla. Sept. 11, 2025); *Willis v. Okeechobee Cnty.*, No. 11-23765-CIV, 2012 WL 12845648, at *2 (S.D. Fla. Aug. 16, 2012). Whether a defendant has done so is case-specific and "depends on the circumstances of the case, including how far litigation has progressed and how long it was possible for the moving party to seek transfer before doing so." *Williams*, 2025 WL 1591213, at *3; *see also Jackson*, 2025 WL 2816769, at *2; *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-24803-CIV, 2020 WL 6120565, at *3 (S.D. Fla. June 29, 2020).

Target brought this motion within a month of the consolidation, which changed the calculus underlying transfer. (Docs. 48, 51; *In re Target Corp. Securities Class Action Litigation*, Doc. 44, 50.) Scheduling orders have not been entered, and discovery has not opened. So Target's transfer motion is not unduly delayed. *Cf. Damian v. Meftah*, No. 19-25273-CIV, 2021 WL 8775762, at *5 (S.D. Fla. Dec. 28, 2021). Nor would granting it be inefficient. *See Ward v. Figure Lending, LLC,* No. 123CV00516MLBRDC, 2023 WL 6194046, at *7 (N.D. Ga. June 21, 2023) (finding the interests of justice supported transfer where discovery hadn't commenced and other motions pending before the court)*; Delorenzo*, 79 F. Supp. 3d at 1285; *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018)

9

("When a case is in its earliest stages, it is generally not inefficient to transfer the case. However, courts generally find that the farther along a case is in the litigation process, the less efficient a transfer would be."). This factor, therefore, supports transfer.

### b. Neutral Factors

The parties rightly agree that the location of relevant documents and the relative means of the parties are neutral. The Court addresses the remaining factors in turn.

### i. Convenience of Parties

The convenience of parties is "practically irrelevant" to the court's transfer decision. *Arnold v. Target Contractors LLC*, No. 5:24-CV-276-ACC-PRL, 2025 WL 1203104, at *3 (M.D. Fla. Feb. 27, 2025). "In a class action[,] plaintiffs will reside all over the country, and any two given states will likely be of equal convenience as a forum." *Abreu v. Pfizer, Inc.*, No. 21-62122-CIV, 2022 WL 2355541, at *19 (S.D. Fla. June 22, 2022). And "[t]he Court places little weight on the domicile of corporate defendants and their place of incorporation." *D3D Techs., Inc. v. Microsoft Corp.*, No. 6:20-CV-1699-ORL-31DCI, 2021 WL 2194598, at *4 (M.D. Fla. Feb. 4, 2021). This factor accordingly cuts neither way. *Id.*; *Grail Semiconductor, Inc. v. Stern*, No. 12-60976-CIV, 2013 WL 2243961, at *3 (S.D. Fla. May 21, 2013).

### ii. Availability of Process to Compel the Attendance of Unwilling Witnesses

Target stresses that four of its key non-party witnesses have retired and still live in Minnesota. This means neither Target nor this Court could compel their appearance for trial. *See Flickinger v. Love's Travel Stops & Country Stores, Inc.*, No. 8:20-CV-2212-T-33CPT, 2020 WL 6134220, at *3 (M.D. Fla. Oct. 18, 2020); *Cf. Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp.2d 1355, 1361 (S.D. Fla. 2001) ("[T]ransfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party."). Yet Target hasn't "suggested that these witnesses would be unwilling to appear of their own accord." *Trafalgar Cap. Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1287 (S.D. Fla. 2012). This factor is therefore neutral. *See id.*; *Flickinger*, 2020 WL 6134220, at *3 ("This factor is relevant only if a party demonstrates, as a threshold matter, that a particular witness would otherwise be unwilling to testify at trial."); *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1329 (M.D. Fla. 2010).

### iii. Weight Accorded to Plaintiffs' Choice of Forum

Normally, a plaintiff's chosen forum "weighs most heavily against transfer" and "is given considerable deference." *Smith v. Costco Wholesale*

11

*Corp.*, No. 8:21-CV-2472-VMC-JSS, 2021 WL 5114494, at *2 (M.D. Fla. Nov. 3, 2021); *see also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). But that deference disappears where, as here, plaintiffs bring a class or derivative action or where the action's underlying facts occurred outside the forum. *See Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 525 (1947); *Smith*, 2021 WL 5114494, at *2; *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, No. 12-61360-CIV, 2012 WL 6102068, at *23 (S.D. Fla. Dec. 7, 2012). So the Court gives little deference to Plaintiffs' choice of forum here. *See Smith*, 2021 WL 5114494, at *2; *Clinton*, 2020 WL 6120565, at *9; *Ingram v. Fam. Dollar Stores of Alabama, Inc.*, No. CV-06-BE-1507-S, 2006 WL 7132701, at *2 (N.D. Ala. Sept. 29, 2006).

## IV. Conclusion

In sum, the Court finds that the § 1404(a) factors weigh in favor of transfer. Accordingly, Target's Omnibus Motion to Transfer (Doc. 50) is **GRANTED**. The Clerk is **DIRECTED** to **TRANSFER** this case to the United States District Court for the District of Minnesota, Minneapolis Division and **CLOSE** the Fort Myers file.

**ORDERED** in Fort Myers, Florida on November 14, 2025.

_____
Kyle C. Dudek
United States District Judge